Filed 5/23/14; unmodified opinion attached

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re FELICITY S., A Person Coming Under the Juvenile Court Law. | |
| CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ELIZABETH V., <br><br> Defendant and Appellant. | A137439 <br><br> (Contra Costa County Super. Ct. No. J12-00173) <br><br> ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT] |

**THE COURT:**

Upon review of the application by the amicus curiae First District Appellate Project for an order modifying the published opinion filed on May 1, 2014, we hereby order that the published opinion be modified as follows:

The caption should be modified to delete *In re S. Lynne Klein* on PUBLIC ADMONISHMENT. The caption should now read *In re FELICITY S.,* A Person Coming Under the Juvenile Court Law.

In the last partial sentence in the last partial paragraph on page 14 and the first partial sentence on the first partial paragraph on page 15, the words "within the meaning of California Rules of Court, rule 5.661(f)" are to be added after "best interests." The sentence now reads: FDAP's recommendation should explain why, despite the absence of a recommendation from the trial counsel or guardian ad litem it is nonetheless in

1

minor's best interests within the meaning of California Rules of Court, rule 5.661(f) for appellate counsel to be appointed.[fn.]

In the first full sentence in the first partial paragraph on page 15, the phrase "within the meaning of rule 5.661(f)" is to be added to the end of the sentence. The sentence now reads: A second, related lesson to be drawn is that when FDAP is approached by a party after briefing has otherwise been completed and when a hearing to consider termination of parental rights under section 366.26 is imminent, in making its recommendation FDAP should take into account whether further delay while new appellate counsel becomes familiar with the case is truly in the minor's best interests within the meaning of rule 5.661(f).[fn.]

In the last sentence of the first full paragraph on page 15, "implicit" is deleted and "conferring with the minor's trial counsel, reviewing briefs already filed in the appeal, examining available key documents or transcript excerpts, assessing the status of the appeal and any delays the appointment could cause, and considering any recommendation made by trial counsel or any other party" is added to the end of the sentence. The sentence now reads: However when the court makes such a discretionary appointment, it is based upon FDAP's representation that doing so is in the best interests of the child based on its conferring with the minor's trial counsel, reviewing briefs already filed in the appeal, examining available key documents or transcript excerpts, assessing the status of the appeal and any delays the appointment could cause, and considering any recommendation made by trial counsel or any other party.

In the second sentence of the first paragraph on page 5, "S. Lynne Klein as minor's counsel on appeal" is deleted and replaced with "appellate counsel for minor." The sentence now reads: We granted that request on August 22, 2013, and appointed appellate counsel for minor and, because prompt resolution of these issues was critical to Felicity's well being, set a 10-day deadline for counsel to file her brief on appeal.[fn.]

On pages 5 through 13, 15 through 16, and 20 through 25, delete the words "Ms. Klein" and replace them with "minor's appellate counsel."

There is no change in the judgment.


Date: _____          _____

Kline, P.J.

Filed 5/1/14   second opn. (admonishment) (unmodified opinion)
**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| In re S. LYNNE KLEIN on **PUBLIC ADMONISHMENT**. | |
| In re FELICITY S., A Person Coming Under the Juvenile Court Law. | |
| CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU, Plaintiff, v. ELIZABETH V., Defendant. | A137439 (Contra Costa County Super. Ct. No. J12-00173) |


Contra Costa County Bureau of Children and Family Services (the bureau) filed an amended petition pursuant to Welfare and Institutions Code section 300, subdivisions (b) and (c),[1] alleging, among other things, that Felicity S. was at substantial risk of harm due to the failure of Elizabeth V. (mother) to provide for the child's medical and emotional needs. Felicity had been hospitalized for uncontrolled diabetes and for attempting to commit suicide. The juvenile court sustained jurisdiction and, at a later dispositional hearing, found by clear and convincing evidence that Felicity could not safely be returned to mother's home, and ordered reunification services. Mother appealed and filed a habeas petition. In our decision filed on October 31, 2013, as amended upon denial of a

---

[1] All further unspecified code sections refer to the Welfare and Institutions Code.

1

petition for rehearing on November 26, 2013, we concluded that substantial evidence supported both orders. By separate order we denied the habeas petition.

The only issues before us at this time are those raised by this court in its November 26, 2013 Order to Show Cause (OSC) why minor's counsel on appeal should not be publicly admonished for the manner in which she represented minor, and in the response thereto. Having considered counsel's response to the OSC and the briefs filed by amici,[2] we conclude that she should not be publicly admonished.

The court is cognizant of the sensitive and sometimes difficult role of counsel for minors in appeals relating to their status, but in which they are not an appellant. The court acknowledges and applauds the essential work performed by the First District Appellate Project (FDAP) and the counsel for minors we appoint based upon FDAP's recommendation to assure that minors' best interests are properly represented in this court. In this unusual case, however, appellate counsel for the minor took a position completely opposite to that taken by minor's trial counsel, did not receive authorization from minor's guardian ad litem to change minor's position, and did not explain why she had changed minor's position until we ordered her to do so. We write to provide guidance to FDAP and to those who represent minors in appellate proceedings to clarify the court's expectations of them in such matters.

## BACKGROUND

In order to put in context our concerns about the conduct of minor's appellate counsel, we briefly summarize the extensive background section of our October 31, 2013 merits decision in this case: In February 2009, Felicity, a preteen, was diagnosed with type 1 diabetes. Her mother and other family members, received full diabetes education and, subsequently, mother attended most of Felicity's medical appointments. However,

---

[2] In our November 26, 2013 order, we invited participation in this matter from the First District Appellate Project, Christopher Judge, minor's trial counsel and CAPTA (Child Assault Prevention Treatment Act) (42 U.S.C. 5106a (b)(2)(A)(xiii)) guardian ad litem, and any other interested organization. We received amici briefs from FDAP, Mr. Judge, the California Appellate Defense Counsel, and the National Association of Counsel for Children, all of which have been carefully considered.

on four separate occasions in 2010, 2011, and January 2012, Felicity was admitted to pediatric intensive care with diabetic keoacidosis (DKA), a life threatening condition caused by not receiving insulin. She also received treatment in emergency rooms on several other occasions after episodes of vomiting.

The bureau's initial petition pursuant to section 300, subdivision (b), was filed on February 2, 2012, as the result of a report from Children's Hospital in Oakland. That report indicated that DKA does not occur if insulin is given as prescribed. Ketones in the blood or urine are early signs that the body has insufficient insulin. Vomiting is a late sign of DKA and often indicates that the body has been without adequate insulin for days. Children's Hospital recommended immediate removal and stated that Felicity's family was in denial about her care.

The bureau initially recommended that reunification services be commenced and that Felicity remain with mother. On February 6, 2012, the court held a detention hearing and found that it was not necessary to detain Felicity.

On March 16, 2012, however, the bureau filed an amended petition which the court heard that day recommending that Felicity be detained. During the interim, Felicity had reported to a social worker that she was afraid to return home because mother threatened to hit her, said she did not care if the court removed Felicity, and was smoking marijuana in the home. Also, mother's boyfriend (later to become her husband) was in the home drinking alcohol every night. Most importantly, Felicity had been placed on an involuntary psychiatric hold after attempting suicide in mother's home with an overdose of insulin. At the hearing, mother submitted to detention. The court found that the bureau had demonstrated substantial danger to Felicity's physical health and that reasonable efforts had been made to prevent removal.

At the jurisdictional hearing on June 11 and June 20, 2012, the court heard testimony from, among others, Dr. Jennifer Olson, an expert in pediatrics and pediatric endocrinology and from mother. Dr. Olson testified extensively concerning the nature of DKA, how unusual it is for a child with type 1 diabetes to suffer with DKA, how it can lead to cerebral edema, and how it is completely preventable with appropriate insulin

3

management, including for a child going through puberty. Mother testified to her view that the DKA episodes were related to Felicity's going through puberty. She testified, incorrectly, that the first DKA episode occurred on the first day of her first menstrual cycle (in January 2012). She insisted that Felicity received the normal doses of insulin. She acknowledged that she used marijuana with a medical recommendation and denied that she did so in the house when Felicity was present. After closing arguments the juvenile court found all the allegations in the amended petition were true and sustained the entire petition. The court accepted the testimony of Dr. Olson and expressed concern about mother's testimony. Felicity remained in the care of other family members.

After several continuances, the dispositional hearing took place on October 22, 2012. At that point, mother's counsel and the current social worker made clear that Felicity did not want to live with mother, at least in part because mother was planning to marry and move to the Czech Republic in the near future. The social worker expressed concerns about mother's commitment to Felicity. Despite the statement of mother's counsel and the testimony of the social worker, mother testified that Felicity told her she wanted to return to mother's home. Mother again expressed her view that Felicity's hospitalizations in January 2012 were because of insulin resistance caused by her hormones, and not because any scheduled injections had been missed.

At the end of the hearing, the court stated: " 'Well, I've carefully reviewed all of the documents that have been submitted for evidence and carefully listened to the testimony of everyone who has testified, and I am satisfied that mother does not get it. Mother has demonstrated in her testimony a rigidity of her personality and an inability to recognize what's really going on.' The court found that there was evidence of marijuana abuse but no evidence of alcohol abuse, and the court modified the case plan to remove alcohol testing. The court approved the remainder of the case plan submitted by the bureau, including the drug-testing requirement. The court adjudged Felicity a dependent of the court. It also found that reasonable efforts had been made to prevent Felicity's removal from the home and that clear and convincing evidence supported the physical removal of Felicity from the home. The court ordered reunification services."

4

Mother filed a timely notice of appeal and a petition for a writ of habeas corpus.[3] On August 13, 2013, after briefing was otherwise complete, FDAP filed a letter requesting that we appoint counsel for Felicity on appeal. We granted that request on August 22, 2013, and appointed S. Lynne Klein as minor's counsel on appeal and, because prompt resolution of these issues was critical to Felicity's well being, set a 10-day deadline for counsel to file her brief on appeal.[4] On August 29, 2013, Ms. Klein requested an extension. She reported to the clerk of this court that she needed more time to file the brief so that she could speak with Felicity.[5] We extended the time for counsel to file minor's brief by 10 days.

---

[3] Mother also filed a petition for an extraordinary writ while this appeal was pending seeking to extend the period for reunification services from 12 to 18 months. (§§ 366.21, subd. (g)(1); 361.5, subd. (a)(3); 366.22, subd. (b).) On August 6, 2013, we filed our nonpublished opinion, *In re Felicity S.,* case No. A138940 (*Felicity I*), denying mother's petition (Cal. Rules of Court, rule 8.452) seeking relief from the order setting the section 366.26 hearing. However, on August 22, 2013, the same day we appointed Ms. Klein, we notified counsel that we were considering whether to stay the 366.26 hearing, which was then scheduled for September 20, 2013, until October 20, 2013, so that we could consider Ms. Klein's brief. We did so on August 29, 2013. Because briefing was not completed, oral argument could not be scheduled until October 15, 2013, and we later extended the stay to November 20, 2013.

[4] The record before us in *Felicity I* apprised this court that on May 29, 2013, after mother had returned from four months in the Czech Republic, and while mother was in the next room at the home of Felicity's older sister Sarah, Felicity had again attempted suicide; Sarah, whom Felicity had telephoned at work, called 911. Felicity was hospitalized and then moved to a locked psychiatric facility for adolescents. (See *Felicity I, supra*, A138940, at p. 5.) The court, on its own motion, takes judicial notice of the record in *Felicity I.* (Evid. Code, §§ 452, subd. (d)(1), 459; cf. *Stephenson v. Drever* (1997) 16 Cal.4th 1167, 1170, fn. 1.)

[5] In her declaration in support of the application for additional time, Ms. Klein wrote: "I am unable to complete [Felicity's] brief by September 3, 2013, for the following reasons. I need to speak with Felicity. I had spoken with Felicity's trial counsel and CAPTA [discussed further, *post*] guardian ad litem on August 27, 2013, and had planned to attempt to speak with Felicity during the late afternoon or early evening of August 28, 2013. However, on the afternoon of August 28, 2013, Christopher Judge contacted [me] and requested that I refrain from contacting Felicity until after Friday because she is currently unstable. Mr. Judge reported that Felicity became very upset at a hearing on August 28, 2013, concerning Felicity's contact with her mother, and a

5

Ms. Klein filed a combined brief in the appeal and in the habeas corpus action on September 13, 2013. On September 20, 2013, counsel for mother left a message for the clerk of this court stating that mother would not be filing a response to minor's brief since minor took the same position as mother, an assessment with which the court agrees. The bureau filed its response to the minor's brief on September 23, 2013.

On September 27, 2013, we issued an order directing Ms. Klein to file a declaration to address four specific concerns about the nature of the position taken in minor's brief on appeal, which are set forth in the margin.[6] Ms. Klein filed a 25-page declaration in response to that order on October 7, 2013.

In her declaration Ms. Klein's response to the first question was "[b]efore writing the brief, I discussed with minor her wishes, her hospitalizations, her placement and placement history, and her communications with her trial counsel. Felicity clearly communicated that she wants to live with her mother, is okay living with her paternal grandmother compared to the group home, wants only unsupervised visits with her mother because she believes that there is no reason for supervised visits, and wants to attend court hearings to talk to the judge." The declaration does not indicate that these

---

contested hearing was set for August 30, 2013, to resolve the matter. The reason for Felicity's dependency is related to her fragile physical and mental health, which has included several hospitalizations for diabetic ketoacidosis (resulting from poorly controlled type I diabetes) and at least two suicide attempts. Therefore, the record alone shows that it is very important that I avoid doing anything likely to cause additional stress or anxiety for Felicity when she is in an unstable state. I will be relying on the assessment of trial counsel and CAPTA guardian ad litem concerning Felicity's emotional state. Also, after speaking with him it may be necessary for me also to consult with Felicity's social worker and/or mental health care provider. . . ."

[6] Ms. Klein was directed to address: "(1) whether she has had any discussions or directions from the minor regarding the issues raised on her behalf in the appeal and habeas petition. (2) Whether she has had communications with the minor's trial counsel relating to the appeal or habeas petition. (3) The basis upon which minor's appellate counsel has taken a position opposite to that taken by the minor in the trial court. (4) Why counsel felt it necessary to submit a 75-page brief that essentially reiterates the positions and legal arguments advanced in the appellate brief filed by mother."

conversations were by telephone and that Ms. Klein never met with Felicity, facts that came out only in response to the court's questions at oral argument on October 15, 2013.[7]

In response to the second question Ms. Klein stated that, "[b]efore writing the brief, I also had a telephone discussion with trial counsel relating to the appeal and habeas." The declaration does not indicate that Ms. Klein did not seek or obtain authorization from Mr. Judge, Felicity's trial counsel and CAPTA guardian ad litem, to reverse the position he had taken on behalf of Felicity regarding her placement, facts which, again, only came out at oral argument.

In response to the court's third question Ms. Klein wrote that, "the basis for my taking a position opposite of that taken by the minor's counsel in the trial court include my communications with the minor, the minor's current relative caretaker (paternal grandmother), and minor's trial counsel. Additional basis for my position include my experience as a registered nurse (with a current inactive license) in acute care hospital settings in psychiatry, pediatrics, and intensive care as well as in an inpatient research mental health institute, research and writing a comment related to mental health issues published in U.C. Davis Law Review in 1984, and accepting an appointment from a U.S. District Court in a pro bono section 1983 civil rights prisoner's case addressing the failure to provide adequate mental health care. Further basis for my opinion is my over 20 years of experience working in California appellate courts on appeals arising from juvenile dependency proceedings."

Ms. Klein elaborated on her answer to question 3 in what she terms a response to question 4(b) on pages 7 through 25 of her declaration. It is apparent from the declaration that much of Ms. Klein's purported justification for reversing the position taken by minor's trial court counsel was based upon her review of the trial court file. However, she acknowledges on page 9 of her declaration that she did not review the trial

---

[7] It was not until Ms. Klein filed a declaration dated January 22, 2014, in response to the OSC that we learned that her first telephone conversation with Felicity took place on September 6, 2013.

7

court file until September 27, 2013, two weeks *after* she had filed minor's brief, which reversed minor's position and the same day we issued our order.

Following submission of the matter on October 15, 2013, we filed our decision on October 31, 2013. It affirmed the juvenile court's orders and included published sections directed toward our reasons for publicly admonishing Ms. Klein. On November 15, 2013, Ms. Klein filed a petition for rehearing directed solely toward the issues surrounding our admonition of her.[8]

On November 26, 2013, we filed our order denying the petition for rehearing, but modifying the opinion to delete the portions relating to the admonition of Ms. Klein. At the same time, we ordered Ms. Klein to show cause why she should not be publicly admonished for her conduct as counsel for minor in this case in three respects: (1) Taking a position on behalf of the minor diametrically opposed to that of her guardian ad litem "without the consent of the guardian ad litem, without any showing that doing so was in the minor's best interest, and indeed, with no explanation for why she had done so." (2) Failing "to address any of the potential concerns identified as a reason for her appointment or whether assisting mother in her arguments before this court would be in the minor's best interests." (3) Filing a 75-page brief taking substantially the same positions on the merits of the appeal and the habeas corpus petition as that taken by mother's counsel on appeal, "making no significant new or different arguments."

Pursuant to Ms. Klein's request, we extended the time for her to file a response to the OSC and modified the briefing and hearing schedule. Ms. Klein filed her response on January 22, 2014. By invitation of the court amici curiae briefs were filed by FDAP in support of Ms. Klein and by Mr. Judge on February 13, 2014. As noted above, the court also received applications to file amici curiae briefs in support of Ms. Klein from the National Association of Counsel for Children and California Appellate Defense Counsel,

---

[8] FDAP filed a letter in support of Ms. Klein on the same day. Mother did not file a petition for rehearing in this court, but subsequently filed a petition for review with respect to our denial of the petition for a writ of habeas corpus in case No. A138655 in the California Supreme Court. That petition was denied on January 15, 2014.

which we have permitted to be filed and have considered. Ms. Klein filed her reply to Mr. Judge's brief on March 6, 2014.

During the hearing on March 19, 2014, we learned that FDAP had requested appointment of minor's counsel on appeal based upon the request of mother's counsel on appeal. Although FDAP did not provide Ms. Klein with a copy of its letter to the court, it advised her that she was being appointed at the request of mother's counsel on appeal. No one at FDAP sought or obtained any information concerning the case from Christopher Judge, minor's CAPTA guardian ad litem and trial counsel.

## DISCUSSION

As noted at the outset, FDAP plays an important role in the administration of justice in this court and has capably done so since 1985. The attorneys it appoints and helps train provide assurance that those coming before us are properly represented in cases which often are not glamorous and which do not command high rates of compensation. The concerns which lead to the issuance of our OSC in this case are quite unusual. Nonetheless, they are sufficiently important that we address them so that they can be avoided in the future.

### I. The Court's Jurisdiction to Consider Possible Discipline of Counsel Appearing Before It

As a threshold matter, Ms. Klein asserts that the court lacks jurisdiction to consider admonishing her. She does not question our jurisdiction to have heard mother's appeal and petition for writ of habeas corpus, but asserts that once we denied the petition for rehearing she filed raising only concerns with matters pertaining to public admonition of her our jurisdiction ended. We disagree.

Code of Civil Procedure section 187 provides: "When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code." The OSC was issued in this case

9

simultaneously with the order denying the petition for rehearing and well before November 30, 2013, the thirtieth day after filing our original decision on October 31, 2013. Further, we have not yet issued a remittitur to the juvenile court with respect to the matters on appeal. Hence, the court's decision had not become final under California Rules of Court, rule 8.264(b)(1) when the OSC was issued.

Criticism of an attorney in a published judicial opinion is a "severe sanction" but one that occurs from time to time. (See 1 Witkin, Cal. Procedure (5th ed. 2008) Attorneys, § 557, p. 684 [providing numerous examples].) We have not approached this possible result with respect to Ms. Klein's conduct lightly, either in our October 31, 2013 opinion, or in issuing the OSC on November 26, 2013. However, it was not necessary for the court to grant Ms. Klein's petition for rehearing to consider further whether she should be publicly admonished. Had we done so, we would have put at large the court's affirmance of the juvenile court's orders and necessarily delayed once again the section 366.26 hearing, which had already been delayed for two months, pending final resolution of the issues raised in Ms. Klein's petition for rehearing. Instead, we issued the OSC. (Cf. *San Bernardo Community Hospital v. Meeks* (1986) 187 Cal.App.3d 457 [court retained jurisdiction to consider OSC re sanctions more than 40 days after decision was filed; remittitur had been stayed].)

Ms. Klein also suggests that this court lacks subject matter jurisdiction over possible discipline of attorneys appearing before it, citing Business and Professions Code section 6100 and *In re Attorney Discipline System* (1998) 19 Cal.4th 582, 607. Section 6100 of the Business and Professions Code, makes clear that the elaborate disciplinary system delegated to the State Bar by the State Bar Act of 1927 does not "limit the inherent power of the Supreme Court to discipline, including to summarily disbar, any attorney." However, prior to the 1951 amendment to section 6100 of the Act, it provided that an attorney could be disbarred or suspended by the Supreme Court, any Court of Appeal, or any superior court of the state. Those powers of the Court of Appeal and superior courts were removed by the 1951 amendment. It could be argued, therefore, that in addition to removing the power of the Court of Appeal to disbar or suspend an

10

attorney, the 1951 amendment removed the Court of Appeal's authority to discipline an attorney for conduct in its presence.

*In re Attorney Discipline System*, relied upon by Ms. Klein, does not address this issue. Rather, because the Legislature had adjourned in September 1998 without authorizing an annual State Bar membership fee for either 1998 or 1999, the Supreme Court was asked by the State Bar to impose a regulatory fee upon attorneys for the purpose of supporting a functioning attorney discipline system. (*In re Attorney Discipline System*, *supra*, 19 Cal.4th at p. 589.) In that context, the court held that "our inherent constitutional authority over attorney discipline includes the power to assess fees upon attorneys to fund the State Bar's existing discipline system." (*Id*. at p. 607.)

The only case we have found that arguably speaks to our authority, in an appropriate matter, to issue a public admonition, is *Sheller v. Superior Court* (2008) 158 Cal.App.4th 1697 (*Sheller*). In that case an attorney from Texas who had been admitted pro hac vice to represent plaintiffs in a putative class action sent a misleading communication to potential class members to solicit their participation as additional named plaintiffs. The trial court issued an order to show cause why counsel's pro hac vice status should not be revoked. After extensive briefing and hearings, the court decided not to revoke the pro hac vice status on condition that the attorney pay a part of defendant's attorneys' fees incurred because of the misleading communication and ordered that the attorney be formally reprimanded for his conduct. On appeal, the Second District held that the trial court had the authority to revoke the admission pro hac vice, but not to impose monetary sanctions or to issue a formal reprimand. While acknowledging the inherent power of the superior court to control the proceedings before it, the court held that "in California, the inherent judicial power of the superior court does *not* extend to attorney disciplinary actions. That power is exclusively held by the Supreme Court and the State Bar, acting as its administrative arm." (*Sheller*, at p. 1710.)

Since *Sheller* relied upon the 1951 amendment to section 6100 discussed above, arguably the same analysis would apply to determine that the Courts of Appeal also lack authority to discipline attorneys before them. But *Sheller* also recognized, that "Trial

11

courts in California are not . . . powerless to sanction attorneys for improper conduct or to control the proceedings before them to prevent injustice.  Thus, trial courts may conduct contempt proceedings, dismiss sham actions, admonish counsel in open court, strike sham pleadings, and report misconduct to the State Bar.  (1 Witkin, Cal. Procedure (4th ed. 1996) Attorneys, § 620, p. 731.)"  (*Shelle*r, *supra*, 158 Cal.App.4th at p. 1710.)

It should be noted that the 1951 amendment to section 6100 of the Business and Professions Code explicitly removed the authority of the courts of appeal and superior courts to *suspend* or *disbar* attorneys, but the statute did not address their inherent authority to discipline attorneys for conduct in their presence, either before or after the amendment.  It is only the addition of the savings clause in section 6100 with respect to the Supreme Court—"Nothing in this article limits the inherent power of the Supreme Court to discipline, including to summarily disbar, any attorney"—from which one can argue that by expressly acknowledging the inherent power of the Supreme Court to discipline, the Legislature intended, by implication, to end that power of the Courts of Appeal and the superior courts.  Certainly there is no direct conflict between Business and Professions Code section 6100, as amended in 1951, and Code of Civil Procedure section 128, subdivision (a), which reserves to every court "the power to do all of the following:  [¶]  . . . [¶]  (5)  To control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto."

However, in light of our conclusion that no formal public admonition of Ms. Klein by this court is necessary or appropriate we need not decide whether the holding of *Sheller* with respect to the superior court's lack of authority to formally reprimand is sound and should be extended to the Courts of Appeal.

12

## II. Public Admonition Is Not Appropriate Regarding Ms. Klein's Failure To Address the Reasons FDAP Requested Her Appointment and the Length or Nature of Her Brief

Having disposed of the threshold issue of jurisdiction we turn briefly to two portions of the OSC which clearly do not warrant an admonition: the reasons FDAP requested appointment of counsel for the minor and the length and nature of Ms. Klein's brief. Indeed, if these had been the only issues presented, we likely would have discharged the OSC without a hearing.

Initially, Ms. Klein advises, and FDAP concurs, that FDAP did not provide her with a copy of its letter requesting appointment of counsel. She cannot be expected to have addressed the reasons for her appointment since she did not know what they were. With respect to the form and length of minor's brief, FDAP advises us that "the brief Ms. Klein filed was consistent with First District practice and guidance FDAP has provided to minors' counsel in the past. . . . FDAP does not advise counsel to file a letter brief. Panel attorneys representing non-appealing minors in this District have filed full briefs, short briefs joining the arguments of another party, and, perhaps informed by their training in other districts, letter briefs." Again, and despite its redundancy and the delay it caused, we find it inappropriate to admonish Ms. Klein for filing an overlong brief.

## III. Ms. Klein's Justification For Altering Minor's Position On Appeal Without the Consent of the Guardian Ad Litem Is Unsupported in the Record

As discussed above, FDAP requested appointment of appellate counsel for Felicity to ensure that a brief was filed that reflected her best interests.[9] In such

---

[9] FDAP wrote: "In the instant case, we recommend appointment of counsel for the minor under the following criteria:

"Where the child's preference or interest is not adequately represented by a party to the appeal.

"In the instant case, the minor is thirteen years old. The juvenile court discussed the appointment of a CASA for her, but one has never been appointed for her. Appointment of appellate counsel for the minor to investigate her multiple placements; to ascertain her legal interests and adequately represent these interests on appeal, is recommended.

situations, if we determine that such appointment would benefit the child, "we shall appoint separate counsel for the child." However, neither FDAP nor the court followed the letter of section 395, subdivision (b)(1) in recommending and appointing appellate counsel in this case.

Section 395, subdivision (b)(1) provides, in relevant part: "In any appellate proceeding in which the child . . . is not an appellant, the court of appeal shall appoint separate counsel for the child if the court of appeal determines, after considering the recommendation of the trial counsel or guardian ad litem appointed for the child . . . , that appointment of counsel would benefit the child. In order to assist the court of appeal in making its determination under this subdivision, the trial counsel or guardian ad litem shall make a recommendation to the court of appeal that separate counsel be appointed in any case in which the trial counsel or guardian ad litem determines that, for the purposes of the appeal, the child's best interests cannot be protected without the appointment of separate counsel, and shall set forth the reasons why the appointment is in the child's best interests. . . ." (See also Cal. Rules of Court, rule 5.661(c).)

In this case we did not receive a recommendation from Mr. Judge and, as we learned at oral argument, neither did FDAP; nor did FDAP ever consult Mr. Judge. One of the lessons to be learned from this experience is that before recommending that we appoint appellate counsel for a non-appealing minor, FDAP should communicate with trial counsel for the minor or the CAPTA guardian ad litem who has not filed a recommendation with the court. Such a procedure is particularly appropriate when FDAP's attention is drawn to the case by a party adverse to minor's position in the juvenile court. FDAP's recommendation should explain why, despite the absence of a recommendation from the trial counsel or guardian ad litem it is nonetheless in minor's

---

"Additionally, whether the minor is being provided with the requisite notice that she can attend juvenile court hearings and provided with opportunity to appear and whether she has been given information regarding the foster care ombudsman are issues only appellate counsel for the minor can bring to this court's attention. Accordingly, we recommend that counsel for the minor be appointed on appeal."

14

best interests for appellate counsel to be appointed.[10]  A second, related lesson to be drawn is that when FDAP is approached by a party after briefing has otherwise been completed and when a hearing to consider termination of parental rights under section 366.26 is imminent, in making its recommendation FDAP should take into account whether further delay while new appellate counsel becomes familiar with the case is truly in the minor's best interests.[11]

FDAP correctly points out that in addition to the court's responsibility to appoint counsel for the minor on appeal "if the court determines . . . that appointment of counsel would benefit the child (§ 395, subd. (b)(1)), the Rules of Court recognize the court's inherent power to appoint counsel for indigent minors.  (Cal. Rules of Court, rule 8.403(b)(2) ["The reviewing court may appoint counsel to represent an indigent child, parent, or guardian"].)  However when the court makes such a discretionary appointment, it is based upon FDAP's implicit representation that doing so is in the best interests of the child.  Regrettably, that did not prove to be the case in this appeal.

We wish to make clear that Ms. Klein bears no responsibility for the manner in which she was appointed.  But the same cannot be said for her decision to oppose the position taken by minor's counsel in the juvenile court.[12]  In her October 7, 2013 declaration, the only legal authority Ms. Klein cited—with no discussion or explanation—purporting to authorize her reversal of minor's position were *In re*

---

[10]  The court notes that the factors for trial counsel to consider in deciding whether to recommend appointment of counsel on appeal for the child include whether the child is "of a sufficient age or development such that he or she is able to understand the nature of the proceedings *and*, . . .  [¶]  (B)  The child's wishes differ from his or her trial counsel's position."  (Cal. Rules of Court, rule 5.661(f)(3)(B).)  (Italics added.)

[11]  The court notes that if trial counsel believes it appropriate to file a recommendation for appointment of appellate counsel "absent good cause, [the recommendation] must be filed in the Court of Appeal no later than 20 calendar days after the filing of the last appellant's opening brief."  (Cal. Rules of Court, rule 5.661(d).)  In this case, mother's counsel apparently approached FDAP at or about the time mother's reply brief was filed.

[12]  Ms. Klein was appointed to represent the minor independently in this matter and not pursuant to FDAP's supervision.

15

*Josiah Z.* (2005) 36 Cal.4th 664 (*Josiah Z.*) and *In re Zeth S.* (2003) 31 Cal.4th 396 (*Zeth S.*).  Her response to the OSC on this issue, and the briefs of amici in support of her position, rely heavily on the language of a footnote in *Josiah Z.* to argue that Ms. Klein was obligated to advocate for Felicity's wishes and that she had consistently expressed a desire to live with mother rather than be placed in alternative housing either with a relative or in a foster care or group home.[13]  However, *Zeth S.* provides Ms. Klein with no support and, when our Supreme Court's full opinion in *Josiah Z.* is considered, it becomes clear that Ms. Klein lacked the necessary authority to reverse the minor's position and support mother's attempt to set aside the jurisdictional and dispositional determinations.

*Zeth S.* need not detain us long.  In that case, our Supreme Court examined whether postjudgment evidence could be considered in an appeal of an order terminating parental rights after a hearing under section 366.26.  After an extensive review of the well established rule that postjudgment evidence may not be presented to an appellate court, and the application of that rule to dependency cases because of the "state's strong interest in the expeditiousness and finality of juvenile dependency proceedings" the court concluded that such evidence could not be considered.  (*Zeth S.*, *supra*, 31 Cal.4th at pp. 412-414.)  *Zeth S.* does not address the question of the authority of minor's appellate counsel, but *Josiah Z.* does.

In *Josiah Z.*, *supra*, 36 Cal.4th 664, the court acknowledged a limited exception to the rule concerning consideration of postjudgment evidence when appellate counsel for the minor believes it is in the minor's best interests to dismiss the minor's appeal *and* has the authorization of the guardian ad litem for the minor to do so.  (*Id.* at pp. 674, 676, 681-684.)  That case arose on facts significantly different from those presented here.

---

[13]  The factual premise that Felicity had consistently expressed such a desire betrays a selective reading of the record.  On at least three occasions between February 2012 and August 2013, Felicity had said she did not want to live with mother.  At oral argument Ms. Klein offered that what she meant to say was that Felicity had consistently told *her* that she wanted to live with mother, a reference, presumably, to her two telephone conversations with Felicity in September 2013.

16

In *Josiah Z.*, a two-year-old child and an infant had been removed from the parents' care when the infant tested positive for drugs at birth. Both parents failed to reunify with their sons and the court terminated reunification services and set a section 366.26 permanency planning hearing. (*Josiah Z.*, *supra*, 36 Cal.4th at p. 672.) The issue presented on appeal was the juvenile court's subsequent order denying placement of the children with their paternal grandparents (apparently pending completion of the section 366.26 hearing). Minors' counsel and the grandparents appealed that order.

New appellate counsel was appointed for the minors who sought funds to investigate whether changed circumstances warranted dismissing the minors' appeal on this issue. "Appellate counsel argued that she had the authority, and indeed the duty, to seek dismissal of the appeal, independent of the views of trial counsel, if she concluded to do so was in the children's best interests." (*Josiah Z.*, *supra*, 36 Cal.4th at p. 673.) The Court of Appeal denied the request for funds, ruling that appellate counsel lacked authority to file a motion to dismiss based on her assessment of the children's best interests. The Supreme Court "granted review to address significant questions of first impression relating to the scope of an appellate counsel's authority in handling a child's dependency appeal." (*Ibid.*)

Before addressing the question of appellate counsel's authority, the court reiterated that: "The best interests of the child are paramount. [Citations.] [¶] In deciding what services or placement are best for the child, time is of the essence." (*Josiah Z.*, *supra*, 36 Cal.4th at pp. 673-674.) The court then went on to explain that motions to dismiss may, in appropriate cases, be brought without running afoul of *Zeth S.*: "[T]he limited issue involved in a motion to dismiss, whether a child should be permitted to abandon a challenge to the trial court ruling, is distinct from the broader issues resolved by the trial court, and consideration of circumscribed evidence in this context does not give rise to the vice we condemned in *Zeth S.*—an appellate court's use of new evidence outside the record to second-guess the trial court's resolution of issues properly committed to it by the statutory scheme." (*Josiah Z.*, at p. 676.) However, "the

right of appeal will be relinquished only with client consent and after the exercise of judicial oversight." (*Id.* at p. 677.)

The court then addressed the question of client consent in circumstances, like those before the court, when the clients could not provide consent to dismissal, by asking "Who then is the client?" (*Josiah Z.*, *supra*, 36 Cal.4th. at p. 678.) The court notes that in civil cases a child who is a party to a suit must appear through a guardian ad litem or similar representative pursuant to Code of Civil Procedure section 372. Once such a section 372 guardian ad litem was appointed, she would be responsible for authorizing a motion to dismiss an appeal. (*Josiah Z.,* at p. 678.) However, "[t]hese principles do not automatically extend to the dependency context. 'Dependency proceedings in the juvenile court are special proceedings governed by their own rules and statutes. ([Welf. & Inst. Code,] § 300 et seq.; Cal. Rules of Court, [former] rule 1440 et seq.) Unless otherwise specified, the requirements of the Civil Code and the Code of Civil Procedure do not apply.' (*In re Jennifer R*. (1993) 14 Cal.App.4th 704, 711, fn. omitted; accord, *In re Shelley J*. (1998) 68 Cal.App.4th 322, 328.) However, in the absence of a dispositive provision in the Welfare and Institutions Code, we may look to these requirements for guidance. (*In re Daniel S*. (2004) 115 Cal.App.4th 903, 911.)" (*Id*. at pp. 678-679.)

The court then examined the role of the CAPTA guardian ad litem in dependency cases, pointing out that various conditions must be met in order to receive federal funding for such guardians: "Among those conditions, a state must ensure appointment of a specially trained guardian ad litem in every judicial proceeding involving an abused or neglected child. (42 U.S.C. § 5106a(b)(2)(A)(xiii).) The CAPTA guardian ad litem is responsible for both evaluating 'the situation and needs of the child' and 'mak[ing] recommendations to the court concerning the best interests of the child.' (42 U.S.C. § 5106a(b)(2)(A)(xiii)(I) & (II).) Under the implementing regulations, states are required to ensure appointment of a guardian ad litem who will 'represent and protect the rights and best interests of the child.' (45 C.F.R. § 1340.14(g) (2004), 55 Fed.Reg. 27639 (July 5, 1990).) Thus, the CAPTA guardian ad litem is a fiduciary whose role is to investigate the child's circumstances and advocate for her best interests. [¶] To ensure CAPTA

18

funding, the Legislature passed [Welfare and Institutions Code] section 326.5, which directed the Judicial Council to adopt court rules governing appointment of CAPTA guardians ad litem. . . . [California Rules of Court, former] rule 1448(d) mirrors the language of CAPTA, requiring that the CAPTA guardian ad litem evaluate 'the situation and needs of the child' and 'make recommendations to the court concerning the best interest of the child.' (Cal. Rules of Court, [former] rule 1448(d)(1), (2).) [¶] . . . To comply with CAPTA's competency requirements, the Rules of Court impose ongoing training and education requirements on both attorneys and court-appointed special advocates. (Cal. Rules of Court, [former] rules 1424(d), 1438(c); see [Welf. & Inst. Code,] § 102, subd. (d).) Thus, CAPTA and the state statutes and rules designed to implement its requirements ensure that each child in a dependency matter will have a trained, independent guardian ad litem prepared to understand the child's circumstances and make recommendations based on an evaluation of the child's best interests. [¶] We read the CAPTA provisions as extending to appeals." (*Josiah Z.*, *supra*, 36 Cal.4th at pp. 679-680, fns. omitted.)

The court then addresses the implications of the state and federal requirements for CAPTA guardians ad litem when, as in the case before it, appellate counsel was not the trial counsel, who continued as the CAPTA guardian ad litem on appeal:

"[T]he CAPTA guardian ad litem has a continuing duty to advocate for the child's best interests, including seeking dismissal of an appeal when it is no longer in the child's best interests. When the CAPTA guardian ad litem and appellate counsel are two different people, the CAPTA guardian ad litem has a duty to authorize appellate counsel to bring a motion to dismiss when it is in the child's best interests and the child is not capable of providing authorization.

"Here, trial counsel had been appointed as the children's CAPTA guardian ad litem. When trial counsel filed a notice of appeal, the appellate court appointed a new appellate counsel, but not a new CAPTA guardian ad litem. Thus, trial counsel continued as the children's CAPTA guardian ad litem on appeal. (Cf. *Regency Health Services, Inc. v. Superior Court* (1998) 64 Cal.App.4th 1496, 1498, fn. 2 [holding that under Code Civ.

19

Proc., § 372, '[a]n appointment in the trial court . . . suffices to appoint a guardian ad litem for appellate purposes also'].)  Given the children's ages, a motion to dismiss could be brought only with the concurrence and authorization of trial counsel in her role as CAPTA guardian ad litem.  *If trial counsel refused to authorize the motion, appellate counsel would have the option of either zealously arguing any issues on appeal or seeking to withdraw.*"  (*Josiah Z.*, *supra*, 36 Cal.4th at p. 681, fn. omitted, italics added.)

Footnote 7, upon which Ms. Klein and amici rely so heavily, states as follows: "At some point, notwithstanding their formal legal incompetence, children become capable of giving informed consent to key decisions affecting their circumstances.  (See, e.g., § 317, subd. (f) [child may give informed consent to invocation of privilege if of sufficient age and maturity]; ABA Stds. for Lawyers Who Represent Children in Abuse and Neglect Cases (1996) stds. B–3, B–4 (ABA Standards) [citation].)  Whether that point has been reached is generally a factual question, but it is self-evident that the children here, at four years old and 18 months old on the date investigatory funds were sought, could not give informed consent."  (*Josiah Z.*, *supra*, 36 Cal.4th at p. 681.)

Ms. Klein and amici read into this footnote an exclusive age-based test, and rely upon the reference to age in section 317, subdivision (f) while ignoring that it refers to "sufficient age and maturity."  They similarly ignore that a child's ability to invoke privileges under section 317, subdivision (f) depends on a finding of the court:  "if the child is found by the court to be of sufficient age and maturity to consent, which shall be presumed, subject to rebuttal by clear and convincing evidence, if the child is over 12 years of age . . . ."  Yet they point to no such judicial finding in connection with Felicity.  They also point to section 317, former subdivision (e), which requires, "In any case in which the child is four years of age or older, counsel shall interview the child to determine the child's wishes and to assess the child's well-being, and shall advise the

20

court of the child's wishes."[14]   However, we now know that Ms. Klein did not meet and interview Felicity; she spoke with her by telephone.

Ms. Klein and amici do not address the question that is perhaps most important in this proceeding:  What did the Supreme Court mean by "incapable" when holding that "A motion to dismiss requires the authorization of the child or, if the child is *incapable* of giving authorization, the authorization of a guardian ad litem acting on the child's behalf and in the child's best interests.  (See ABA Model Rules Prof. Conduct, rule 1.14, coms. [1], [3]; ABA Model Code Prof. Responsibility, EC 7–12.)"  (*Josiah Z., supra*, 31 Cal.4th at pp. 680-681, italics added.)

Christopher Judge is, so far as we know, and was at the time Felicity's brief on appeal was being prepared in September 2013, her CAPTA guardian ad litem.  His views of what was in Felicity's best interest at the jurisdictional and dispositional hearings could not have been more clear.  At the 12-month hearing in June 2012, he told the court: "Your Honor, I think the biggest problem here is that mother really either can't or won't understand the seriousness and the urgency of this medical situation that her daughter faces.  This child has been in the hospital multiple times with DKAs . . . .  Mother says she leaves the child with a trained grandmother.  Grandmother is oblivious to what's going on while the child is calling the sister and apparently also the mother asking for help.  And we haven't heard that the mother ever called the grandmother to say what's going on in the house where you are with the child."  Judge added that mother rejected the doctor's opinion about the cause of DKA and commented that mother's refusal to believe the doctor made it unlikely that she was "going to assiduously follow the doctor's advice as [to] how you prevent the DKA from happening again."

---

**14**  The next sentence of section 317, former subdivision (e) provides:  "Counsel for the child shall not advocate for the return of the child if, to the best of his or her knowledge, that return conflicts with the protection and safety of the child."  *Zeth S.* holds that section 317, former subdivision (e) does not apply to counsel on appeal, but *Josiah Z.,* makes clear that the child's best interests remain paramount in any appeal. (*Josiah Z., supra*, 36 Cal. 4th at pp. 673-674.)

He continued: "I don't feel that the child would be safe returning to her. I think this mother just believes that it's one of these things that happens and take the child to the hospital, they'll take care of it, and it's not a big deal. It is a big deal. And the doctor I think she was emphatic in her concern during her testimony that—and basically saying that this should not be happening. And it's happening again and again and again and again. And I don't think—even now mother doesn't buy it. She just doesn't buy it. [¶] So I just feel that regardless of whatever the explanations have been in the past the handwriting is on the wall as far as this mother's ability to administer medication that this child needs and that she's just not going to be doing it. So I agree with the county counsel and submit."

At the dispositional hearing on October 22, 2012, Christopher Judge again told the court that he did not believe Felicity would be safe in mother's care: "Your Honor, my position is simple. I just want Felicity to be safe. I have to agree with county counsel. There's a disconnect here between what mother says she was doing in the past, what she will do in the future if Felicity is returned to her and what has happened in the past. And mother just doesn't seem to see a relationship or her role in all the hospitalizations that Felicity had. [¶] [T]he report by Dr. Ahmad states at the very bottom in the doctor's hand [writing] that he reemphasized to mother on July 3rd that menses doesn't cause DKA, which is something that mother flatly contradicted on the witness stand today when I asked her." He emphasized that Felicity would "face the same dangers in her mother's hands now that she did in the past." He added: "I'm just mystified why mother can't seem to do or hasn't been able to seem to do what her own adult children, Felicity's caretakers, have been able to do. And that is keep Felicity out of the hospital. She's not been to the hospital since the child was detained. So whatever's happening in the home that Felicity is in now, it's different than what was going on in mother's home."

Mr. Judge's only participation in this court has been a letter he filed on November 27, 2013, in which he makes clear that he had not authorized the filing of Ms. Klein's petition for rehearing, and the amicus curiae brief he filed on February 13, 2014, at our invitation. In that brief he states that "the child was demonstrably mentally incapable of

22

determining her own best interests: although she had stated a strong wish to return to her mother, she was found to have repeatedly exhibited self-destructive, life-threatening and even suicidal thoughts and behaviors while in her mother's care. To conclude that the child's stated interests reflected her best interests is to confuse the two and endanger the child."

Ms. Klein replies to Mr. Judge by making the surprising assertion that "Mr. Judge's position is unsupported by the record or any evidence." Nonsense. While Ms. Klein may have been relying on Mr. Judge's assessment of Felicity when she requested more time to file her brief on appeal on September 3, 2013 (see fn. 5, *ante*), her October 7th declaration acknowledges that "the record clearly showed that Felicity needed intensive mental health therapy. . . . Felicity's need for intensive mental health therapy is well documented." Indeed, the juvenile court file which Ms. Klein acknowledged reviewing on September 27, 2013, included Judge Baskin's findings at the conclusion of the June 3-4, 2013 hearing on mother's motion to extend reunification services from 12 to 18 months—less than three months before Ms. Klein was appointed to represent Felicity: " 'It is clear to me based on the facts that are evidence in the report and from testimony adduced at this hearing that this court has no alternative but to adopt the recommendations submitted by the bureau. This is not a close case. This is not even a case where there is another side or another alternative that has to be seriously debated.

" 'Felicity as I speak is recovering from another 5150, one in which her mother was at hand and for a second significant lapse failed to take the appropriate directive and immediate actions that were needed for Felicity's care. I'm not satisfied that her mother has any insight into the fragility of Felicity's emotional and physical health and as a result is intent on making plans that seem to completely overlook Felicity's needs and only take into account her own personal needs making Felicity's needs subservient to her own needs. If the court were to go along with that that would subject Felicity not only to the immediate risk and detriment to her safety and physical and emotional safety but would also subject her to a plan of action that was completely lacking in detail and

23

lacking in any kind of forethought or care that someone of Felicity's needs would have to have considered.' " (*Felicity I*, *supra*, A138940, at pp. 7-8.)

Regrettably, there is ample evidence in the record, and was when Ms. Klein had her two telephone conversations with Felicity in September, that however clear Felicity may have been about wishing to return to her mother's care, she was not mentally capable of making such a momentous, potentially life-threatening decision. Ms. Klein may have honestly thought based upon her background as a nurse and the other matters in her personal history, which she points to as reasons for siding with mother instead of the bureau on this appeal, that she was better able to assess Felicity's capacity than was Mr. Judge.[15] But she had two telephone conversations with Felicity; Mr. Judge, a trained CAPTA guardian ad litem, had met with her and appeared on her behalf countless times over the previous 18 months.[16]

Further, in this proceeding Ms. Klein and amici assume that she was acting in Felicity's best interests when changing course on this appeal. Indeed, to have any argument under *Josiah Z.* that she was fulfilling her obligations as appellate counsel, she

---

[15] Amicus National Association of Counsel for Children acknowledges in its brief that when assessing the child's best interests "the attorney is required to 'formulate and present a position which serves the child's interests' based on 'objective criteria, rather than solely on the life experience or instinct of the attorney.' (NACC Revised Version of the ABA Standards, Standard B-4 (2) at p. 9). Objective criteria include, but are not limited to 1) the child's circumstances as determined through a full and efficient investigation; 2) an assessment of the child at the time of the attorney's determination; 3) the options available in light of the two child welfare paradigms—psychological parent and family network; and 4) the opinions of medical, mental health, educational, social work and other experts. (*Id.,* Std B-4 (2) at p. 9.)" In this case, rather than do the "full and efficient investigation" called for Ms. Klein relied on what Felicity told her and her personal experience.

[16] Ms. Klein has not told us how long her telephone conversations with Felicity were. In her request for a continuance, filed September 3, 2013, she states that after speaking with Felicity, she anticipated getting "in contact with her social worker and/or mental health care provider." Her October 7th declaration does not indicate any such additional contacts were made. Indeed, there is no evidence that she contacted or attempted to contact mother to discuss the court's concerns with mother's behavior despite her decision to reiterate mother's arguments on appeal on behalf of Felicity.

24

certainly should have thought so.  But one searches Ms. Klein's October 7, 2013 declaration, and her declaration in response to the OSC for any testimony under oath that she made a "best interests" assessment on Felicity's behalf.  To the contrary, the procedural irregularities and supposed failings of the bureau in arranging appropriate care for Felicity she discusses at length do not address the most important question pertaining to Felicity's best interests:  Would she be safe if returned to her mother's care?  Rather, she faults Mr. Judge for not giving sufficient credence to Felicity's preferences as they changed from time to time just as she argues now that Felicity was capable of instructing her to take mother's side, with no indication that returning to mother's care would have been safe, much less in her best interest.

## DISPOSITION

As indicated above, Ms. Klein should not be publicly admonished for not addressing the reasons FDAP sought her appointment and the lack of helpfulness of the brief she chose to file.  Whether she should be admonished for disregarding Mr. Judge's role as CAPTA guardian in deciding to give more weight to Felicity's views about returning to her mother's care than those of Mr. Judge and the juvenile court is a closer question.  However, on balance it is our conclusion that a public admonition is not necessary.  For these reasons, the Order to Show Cause is hereby DISCHARGED.

The clerk is directed to transmit to the juvenile court the remittitur with respect to our decision of October 31, 2013, as modified by order of November 26, 2013, forthwith.

_____
Brick, J.*

We concur:

_____
Kline, P.J.

_____
Haerle, J.

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

25

| | |
|---|---|
| Trial Court: | Contra Costa County Superior Court |
| Trial Judge: | Hon. Barry Baskin |
| Attorneys for Defendant and Appellant: | Under Appointment by the Court of Appeal<br>Neale B. Gold |
| Attorneys for Plaintiff and Respondent:<br>Real Party in Interest | Office of the County Counsel<br>Sharon L. Anderson<br>Jacqueline Y. Woods |
| Attorney for Minor | Under Appointment by the Court of Appeal<br>S. Lynne Klein |
| Attorneys for S. Lynne Klein | Arnold & Porter<br>Sean M. SeLegue |
| Attorneys for Amicus Curiae<br>On behalf of S. Lynne Klein | First District Appellate Project<br>Jonathan Soglin<br><br>The National Association of Counsel for<br>Children<br>Janet G. Sherwood<br><br>California Appellate Defense Counsel<br>Randi Covin<br><br>Sargeant & Conrad<br>Linda J. Conrad |
| Attorney for Amicus Curiae<br>On behalf of Minor | Christopher E. Judge |